UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM THEODOREHARRY OLDS,

                Petitioner,              Case No. 1:18-cv-830

v.                                Honorable Janet T. Neff

TONY TRIERWEILER,

                Respondent.
_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner William Theodoreharry Olds is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia County, Michigan. Following a bench trial in the Wayne County Circuit Court, Petitioner was convicted of second-degree murder, in violation of Mich. Comp. Laws § 750.317. On May 23, 2013, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 30 years to 41 years, 8 months.

       On July 13, 2018, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

     I.     Petitioner was denied his Fourteenth Amendment right to due process where the trial court erred in increasing the statutory sentencing guideline range based on disputed facts that the prosecutor did not charge and prove beyond a reasonable doubt, in violation of both the state and federal constitutions.

     II.    Petitioner was denied his constitutional right to effective assistance of counsel where his trial counsel failed to consult and secure an expert witness for defense in order to show that the deceased's death was not caused by Petitioner, in violation of both the state and federal constitutions.

III.   Petitioner was denied his constitutional right to a fair trial where there was not sufficient evidence from which the prosecution proved beyond a reasonable doubt that he was guilty of second-degree murder, in violation of both the state and federal constitutions.

(Pet., ECF No. 1, PageID.7, 13, 19.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the petition should be denied because the claims are unexhausted, procedurally defaulted, not cognizable, or meritless.  Upon review and application of the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that Petitioner's claims are procedurally defaulted and/or meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.   Factual Allegations

The facts underlying Petitioner's conviction and the testimony at his trial were summarized by the Michigan Court of Appeals as follows:

Defendant and Pharr had been in a relationship for several years and, according to defendant, Pharr lived with him sometimes.  Defendant spoke to his sister, Ruth Hubbard, on the telephone three times throughout the day prior to Pharr's death. During those telephone calls, Hubbard heard defendant yelling at Pharr.  She also heard thumping and banging in the background.  Hubbard testified that defendant seemed sad and upset. She also testified that, in the past, she had seen defendant slap and hit Pharr.

During a late-night telephone call, defendant told Hubbard that he was afraid and nervous, Pharr had had a seizure after she choked on some food, and she would not wake up.  An ambulance arrived while Hubbard was on the telephone with defendant.  Christopher Barber of the Detroit Fire Department, EMS Division, arrived at defendant's house early in the morning of on December 31, 2012, after receiving a 911 call regarding a woman choking.  Barber observed Pharr lying in the doorway and she was not breathing.  Defendant was standing over Pharr while wearing a pair of white surgical gloves.  Defendant told Barber to hurry up and that Pharr had choked.  Barber did not recall defendant stating that Pharr had a seizure.

Barber noticed that Pharr had old bruises and scratches on her body, including an old bruise over her eye that was dark and swollen.  She also had an eye injury, which Barber testified looked like it had been inflicted hours earlier, and newer

2

scratches on her knuckles.  Pharr was taken to the hospital, where she underwent surgery, but she died by 5:30 a.m.

Dr. Aveneesh Gupta of the Wayne County Medical Examiner's Office performed a post-mortem medical examination on Pharr and testified as an expert at trial.  He opined that Pharr suffered from blunt-force trauma to the abdomen, which caused Pharr's internal injuries and death, and these injuries could have been caused by "anything from a fist, a foot, a microphone, even falling down."  But, in Dr. Gupta's opinion, they were inflicted by an object that was "circular in shape."  Dr. Gupta observed that Pharr had multiple contusions and abrasions—some new and others at various stages of healing—all over her body.  Dr. Gupta also observed rib fractures, which could have been older than her other injuries.  Finally, Dr. Gupta's medical examination revealed that several hairs on the back of Pharr's head had been pulled out.

Defendant testified that he did not cause Pharr's injuries or death.  Defendant claimed that, although he spent part of the day prior to Pharr's death with her, she left his house late in the evening to go to the house of a man only identified as "Rich."  Defendant testified that Rich "jumped on" Pharr while she was at his house and beat her up, and when Pharr returned, she fell and had a seizure.  Defendant testified that he tripped over Pharr twice and his feet hit her chest.

(Mich. Ct. App. Op., ECF no. 9-6, PageID.296-297.)  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

The prosecutor charged Petitioner with felony murder, in violation of Mich. Comp. Laws § 750.316, based on a predicate felony of torture, as defined in Mich. Comp. Laws § 750.85.  On the day scheduled for Petitioner's jury trial, Petitioner waived the jury.  (Trial Tr. I, ECF No. 9-2, PageID.132-134.)  The trial judge heard just under two hours of testimony over a two-day period; he rendered his verdict on the third day.  The judge concluded that the prosecutor had not met her burden with regard to demonstrating the predicate felony of torture; therefore, the principal charge of felony-murder was not established.  (Trial Tr. III, ECF No. 9-4, PageID.266-268.)  But, the judge also concluded that the prosecutor had established the elements of the lesser-included charge of second-degree murder, and he found Petitioner guilty of that offense.  (*Id.*, PageID.268-269.)

Two weeks later, the judge sentenced Petitioner as described above.  (Sentencing Tr., ECF No. 9-5.)

Petitioner, with the assistance of counsel, appealed his conviction and sentence to the Michigan Court of Appeals raising two issues: sufficiency of the evidence and error in the scoring of two offense variables.  (Pet'r's Appeal Br., ECF No. 9-6, PageID.310.)  By unpublished opinion issued October 23, 2014, the Court of Appeals rejected Petitioner's challenges, concluding that the evidence was sufficient to support the conviction and the trial court properly scored Petitioner's offense variables.  (Mich. Ct. App. Op., ECF No. 9-6.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same issues he had raised in the court of appeals.  (Pet'r's Appl. for Leave to Appeal, ECF No. 9-7, PageID.341-345.)  By order entered April 28, 2015, the Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 9-7, PageID.340.)

Petitioner returned to the trial court.  On February 5, 2016, Petitioner filed a motion for relief from judgment raising three issues: a challenge to the scoring of the same offense variables he had challenged on direct appeal, but on a new ground; a claim that counsel had rendered ineffective assistance because he failed to investigate or secure an expert witness regarding the cause of death; and a reiteration of the claim that the evidence was insufficient to support a conviction for second-degree murder.   (Pet'r's Mot. for Relief from J., ECF No. 11-2, PageID.524.)  By opinion and order entered June 3, 2016, the trial court denied Petitioner's motion. (Wayne Cty. Cir. Ct. Op. and Order, ECF No. 11-3, PageID.604-607.)

The trial court rejected Petitioner's sufficiency and scoring challenges because he had presented those issues on direct appeal, and the court of appeals had ruled against him.  The trial court considered Petitioner's ineffective assistance claim and concluded it failed on the merits.

(*Id.*, PageID.606.)  The court also concluded, however, that Petitioner had failed to show cause and prejudice for failing to raise the ineffective assistance claim on direct appeal.  (*Id.*)

By *pro per* applications, Petitioner sought leave to appeal the trial court's order in the Michigan Court of Appeals and then the Michigan Supreme Court.  Petitioner did not raise all three of his motion-for-relief-from-judgment issues in the appellate courts.  Instead, he raised only the ineffective assistance of counsel claim and responded to the trial court's determination that Petitioner had failed to show cause and prejudice by claiming that his appellate counsel had rendered ineffective assistance as well.  (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 9-8, PageID.376; Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 9-9, PageID.415.)  The appellate court denied leave to appeal by orders entered June 1, 2017, and May 1, 2018, respectively.  (Mich. Ct. App. Order, ECF No. 9-8, PageID.370; Mich. Order, ECF No. 9-9, PageID.412.)  Petitioner then timely filed his habeas petition.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Use of judge-found facts at sentencing

Petitioner challenges his sentence because the trial judge relied upon facts he found beyond a preponderance of the evidence when scoring offense variables 1 and 7 under Michigan's sentencing guidelines and determining Petitioner's minimum sentence. Petitioner contends that under the authority of *Alleyne v. United States*, 570 U.S. 99 (2013), his sentence violates the Sixth Amendment.

Petitioner's claim is based upon a line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and

Fourteenth Amendments and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines. One group of five justices concluded that the federal sentencing guidelines ran afoul of the Sixth Amendment. Another group of five justices determined the appropriate remedy was to make the guidelines discretionary.

Subsequently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. Petitioner's trial judge could not rely on the authority of *Alleyne* when he sentenced Petitioner because Petitioner was sentenced 25 days before the Supreme Court issued the *Alleyne* opinion. At the time Petitioner was sentenced, the federal law that was clearly established in *Harris v. United States*, 536 U.S. 545 (2002), held just the opposite: "judicial factfinding that increases the mandatory minimum sentence for a crime is permissible under the Sixth Amendment." *Alleyne*, 570 U.S. at 103 (reciting the *Harris* holding).[1]

---

[1] The *Alleyne* analysis becomes somewhat muddled by Petitioner's waiver of his right to a jury trial. Because of the jury waiver, all of the fact-finding at Petitioner's trial and sentencing was judicial factfinding. It is apparent, however, that the judge's findings of fact relating to the elements of the crime were subjected to the "beyond a reasonable doubt" standard of proof (Trial Tr. III, ECF No. 9-4, PageID.265, 269), while the judge's findings of fact at sentencing were subjected to the "preponderance of the evidence" standard of proof (Mich. Ct. App. Op., ECF No. 9-6, PageID.298-301). *Apprendi* and its progeny are premised on the idea that some facts are of such consequence that their determination falls within the Sixth Amendment jury guarantee and the Fifth Amendment and Fourteenth Amendment due process guarantees of proof beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The *Apprendi* line of cases focuses on the Sixth Amendment jury trial right, but references to the jury trial right are often used as a proxy for the Sixth Amendment jury trial right *and* the Fifth and Fourteenth Amendment due process right to proof beyond a reasonable doubt. The fact that Petitioner waived his Sixth Amendment right did not alter his due process right to proof beyond a reasonable doubt of facts that would be properly decided by a jury absent the waiver.

It was not immediately clear whether *Alleyne*'s overruling of *Harris* and *Alleyne*'s pronouncement that *Blakely* applied to mandatory minimums as well, called for a change with respect to Michigan's sentencing regime where, with some exceptions not applicable here, the sentence imposed was indeterminate, the minimum sentence dictated by the sentencing guidelines was a range within which the court might exercise discretion rather than a definite number, and where the court was able to depart from that range with explanation. Petitioner's appellate counsel did not raise the *Alleyne* issue. She challenged the scoring of Offense Variables 1 and 7 under state law, but not as a judicial fact-finding violation under the *Apprendi* line of cases. Petitioner was not prejudiced by the omission because, while Petitioner's direct appeal was pending in the court of appeals, that court determined that *Alleyne* did not affect Michigan's sentencing regime.

In *People v. Herron*, 845 N.W.2d 533, 539 (Mich. Ct. App. 2013), the Michigan Court of Appeals concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence; it had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law. The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment and, as a consequence, the question was not a matter of clearly established Supreme Court precedent. *Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory statutory minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .").[2]

---

[2] The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018). The *Robinson* Court specifically held "that *Alleyne* clearly established the unconstitutionality of Michigan's mandatory sentencing regime[.]" *Id*. at 714.

*Herron* guided decisions on the applicability of *Alleyne* in the Michigan courts until July 29, 2015, when the Michigan Supreme Court decided that the *Herron* decision was wrong, reasoning that, because the "guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*. *People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015) (emphasis in original). As a consequence, the *Lockridge* court held the mandatory application of Michigan's sentencing guidelines was unconstitutional. The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only. *Id.* at 520-21.

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review." *Id.* at 523. The Michigan Supreme Court had denied Petitioner's application for leave to appeal three months before it issued the *Lockridge* opinion; therefore, it was no longer pending on direct review and *Lockridge* did not offer Petitioner any relief.[3] Nonetheless, Petitioner included an *Alleyne* challenge, focused solely on the scoring of Offense Variables 1 and 7, in his February 2, 2016, motion for relief from judgment.

The trial court refused to consider Petitioner's collateral challenge to the Offense Variable scoring, not because *Alleyne* or *Lockridge* did not apply, but because Petitioner had already challenged the scoring of those variables on direct appeal and the issue had been decided against him. Michigan Court Rule 6.508 precludes the trial court from granting relief from judgment if

---

[3] The Sixth Circuit's determination in *Robinson* that *Alleyne* clearly established that Michigan's sentencing scheme was unconstitutional, considered in combination with *Lockridge*'s determination that the *Lockridge* remedy does not apply to cases that become final before the date the *Lockridge* opinion was issued, creates a window where the Michigan courts might not provide *Alleyne* relief because a defendant's conviction and sentence became final before *Lockridge* yet the defendant might be entitled to relief because the conviction and sentence did not become final until after *Alleyne*. Petitioner's claim falls within that window.

10

the motion "alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding . . . unless the defendant establishes that a retroactive change in the law had undermined the prior decision." Mich. Ct. R. 6.508(D)(2).

It appears that the trial court's determination that the *Alleyne/Lockridge* ground for relief had been decided against Petitioner in his direct appeal is incorrect and unreasonable on the record. Petitioner did not raise such a challenge to his sentence during his direct appeal. Ultimately, however, whether the trial court's determination was right or wrong was rendered immaterial because Petitioner did not include the issue in his subsequent applications for leave to appeal filed in the Michigan Court of Appeals or the Michigan Supreme Court.

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). Petitioner has not raised the *Alleyne* issue in either Michigan appellate court.

Failure to exhaust state court remedies is only a problem, however, if there is a state court remedy available for petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction or sentence. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available to the petitioner, exhaustion does

not present a problem, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court. *Id*.

Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq.* See Mich. Ct. R. 6.502(G)(1). Petitioner already has filed his one allotted motion. He therefore has no available remedy. At this juncture, the court must consider whether there is cause and prejudice to excuse Petitioner's failure to present the claims in state court. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160. To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim. *Gray*, 518 U.S. at 162.

Petitioner offers no external cause for his failure to include the *Alleyne* issue on appeal. Factors that may establish cause include interference by officials, attorney error rising to the level of ineffective assistance of counsel, and a showing that the factual or legal basis for a claim was not reasonably available. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991) (quotations omitted)). There is no apparent interference by officials, Petitioner is not entitled to counsel to pursue a collateral challenge under Mich. Ct. R. 6.500 et seq.,[4] and Petitioner raised the claim in the trial court, so he cannot show that the factual or legal basis was unavailable. Petitioner's *pro se* status or ignorance of the requirement to raise the issue at all levels

---

[4] Ordinarily, there is "no constitutional right to an attorney in state postconviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 725 (1991).

of the state courts would not constitute cause. *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995).

Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). But Petitioner cannot show prejudice here. Indeed any error was harmless.

For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Accepting Petitioner's contention that an *Alleyne* analysis requires changing his scores for Offense Variables 1 and 7 to zero, it would leave his offense variable score at 75.[5] (Sentencing Information Report, ECF No. 9-6, PageID.304.) With that score, Petitioner would remain in the same sentencing grid, with the same minimum sentence range: 270-900 months. *See* Mich. Comp. Laws §§ 777.21(3), 777.61. Whether the trial judge exercised his discretion to select a sentence based on a range of 270 to 900 months with an offense variable score of 135 or with an offense variable score of 75 does not matter. Any error, therefore, would be harmless. *See, e.g., United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998) ("Because the sentence range would be identical even if this court adopted Charles's assertions on the proper amount of drugs he sold, any

---

[5] There may be other offense variables that could be challenged under *Alleyne*; but, Petitioner has not challenged them in this Court or in the state courts. If Petitioner expanded his challenge to include additional variables, it might alter the conclusion that any error was harmless or non-prejudicial. It would not change the conclusion that Petitioner has failed to establish cause for his failure to raise the issue in his first collateral challenge.

calculation errors on the part of the district judge would constitute harmless error."); *United States v. Dyer*, 478 F. App'x 308, 309 (6th Cir. 2012) ("[D]enying Dyer's motion on this ground amounted to no more than harmless error because applying the two-level reduction would not have lowered his sentencing guidelines range."); *United States v. Punschke*, 247 F. App'x 789, 794 (6th Cir. 2007) ("[A]ny error in counting this conviction would be harmless error.  That is, whether defendant is assessed two or three criminal history points, his criminal history category would still be II.  As a result, any error in counting his conviction would have no affect [sic] on the defendant's sentencing guideline range.").[6]

## IV.    Failure to secure an expert witness

Petitioner contends that his counsel rendered constitutionally ineffective assistance when he failed to secure an expert to render an opinion regarding the cause of the victim's death or, as Petitioner states it, "to show that the victim's death was not caused by Petitioner."  (Pet., ECF No. 1, PageID.13.)  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.   A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350

---

[6] The standard of "harmlessness" in the cited cases is likely the direct review standard of *Chapman v. California*, 386 U.S. 18 (1967), rather than the collateral review standard of *Brecht*.  That distinction, however, does not call for a different result.  Where the correction of a miscalculation does not alter the guideline range, the error is harmless under either definition.

U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The Wayne County Circuit Court judge applied the *Strickland* standard to resolve Petitioner's ineffective assistance of counsel claim.  The judge described the standard as follows: "For a defendant to establish a claim that he was denied his state or federal constitutional right to the effective assistance of counsel, he must show that his attorney's representation fell below an objective standard of reasonableness and that this was so prejudicial to him that he was denied a fair trial."  (Wayne Cty. Cir. Ct. Op. and Order, ECF No. 11-3, PageID.605) (footnote omitted). The judge concluded:

> In this case, defendant has failed to overcome the heavy burden of proving that he received ineffective assistance of counsel.  The record does not demonstrate that defense counsel's performance was unreasonable and his trial strategy and determinations will not be substituted with the judgment of this Court.  This Court finds that defense counsel performed competently in his representation of defendant at his trial.  Therefore, defendant's claims are found to be without merit.

(*Id.*, PageID.606.)

Because the judge properly stated and expressly applied the *Strickland* standard, it cannot be said that the state court's determination was "contrary to" *Strickland*, the clearly established federal law regarding ineffective assistance of counsel.  Habeas relief is available, therefore, only if Petitioner shows that the state court's application of the standard was unreasonable.  In resolving that question, this Court must afford the state court's decision "double deference." *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*,

571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *see also Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The trial court judge's determination appears to be reasonable on its face. Indeed, it echoes clearly established federal law. The United States Supreme Court has recognized that "[t]he selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after a thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting *Strickland*). Petitioner attempts to squeeze his challenge within the narrow confines of "challengeable" expert witness decisions by claiming that counsel failed to thoroughly investigate. (Pet., ECF No. 1, PageID.15.) There is no record support for Petitioner's contention that counsel did not investigate the cause of the victim's death or the availability of expert witnesses to support Petitioner's defense. Absent such support—absent some record evidence to support his claim that counsel failed to investigate—Petitioner cannot overcome the presumption that counsel's actions fell within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Moreover, Petitioner offers no record support for his suggestion that an expert exists who was willing to testify and whose testimony would be favorable to Petitioner. Without that, it is impossible for Petitioner to show that his counsel was professionally unreasonable for failing to pursue such expert testimony or that it made any difference in the result. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain

an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[7]

If one considers the nature of the expert testimony Petitioner suggests counsel should have secured, the reason he cannot show that such an expert exists is apparent. Petitioner wanted counsel to obtain expert testimony "to show that the victim's death was not caused by Petitioner." (Pet., ECF No. 1, PageID.13.) The expert testimony the prosecutor offered, however, did not show that Petitioner caused the victim's death. It only showed that the death was caused by internal injuries that resulted from blunt force trauma. The prosecutor's expert could not describe any particular weapon that caused the blunt force trauma or provide any clue as to who might have applied that blunt force to the victim. Indeed, each of Petitioner's explanations for the victim's injuries included some form of blunt force trauma that seemed entirely consistent with the prosecutor's expert's testimony.

At different times, Petitioner claimed that the victim was choking, fell, and suffered a seizure (Trial Tr. II, ECF No. 9-3, PageID.229), that she was beaten by "a guy named Rich" (*id.*,

---

[7] *See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366 F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense."); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding the mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

PageID.237-238), and that, after she fell to the floor, he tripped over her several times such that his feet kicked the victim's chest (*id.*, PageID.248-249).  Petitioner's counsel acknowledged that, between Petitioner's two recorded police interviews and his trial testimony, Petitioner has "give[n] conflicting explanations of what could have happened to her."  (*Id.*, PageID.258.)  Setting aside the fact that Petitioner has not identified an expert who might have offered the testimony he seeks, he has also failed to explain how any expert might possibly offer opinion testimony that would exclude Petitioner, or any particular person, as the source of the blunt force trauma that caused the internal injuries that resulted in the victim's death.

For all of these reasons, Petitioner has failed to show that the state court's rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## V.      Sufficiency of the evidence

Petitioner claims that his conviction must be set aside because the prosecutor failed to introduce sufficient evidence to support the determination, beyond a reasonable doubt, that he intended to kill the victim or actually killed the victim.  (Pet., ECF No. 1, PageID.24.)  A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to

the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:   First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Although the Michigan Court of Appeals relied upon state authority for the standard, it applied the *Jackson* standard to determine whether there was sufficient evidence to support Petitioner's conviction.  (Mich. Ct. App. Op., ECF No. 9-6, PageID.297.)  The appellate court reviewed the evidence in a light most favorable to the prosecution against the elements of the offense.  (*Id.*, PageID.297-298.)  The court reasoned:

> Defendant is correct that the prosecution presented no direct evidence that he caused Pharr's injuries.  *See Fletcher*, 260 Mich App at 560.  However, this case can be compared to *Fletcher* and distinguished from *Fisher* because the prosecution provided sufficient circumstantial evidence for a rational trial court to find that defendant was the cause of Pharr's injuries.  See *id.* at 559-564; *Fisher*, 193 Mich App at 286-289.
>
> Given Hubbard's testimony that defendant had previously slapped and hit Pharr and Dr. Gupta's testimony that Pharr had injuries all over her body, some of which were over a day old, a rational trier of fact could have inferred that defendant and Pharr had an abusive relationship and defendant caused Pharr's older injuries. From that same testimony, along with evidence that defendant was upset on the day leading to Pharr's death, that the couple had been fighting, that defendant told

19

> Hubbard that he observed Pharr have a seizure and choke, and that defendant was
> standing over Pharr, who appeared to be dead, when EMS arrived, a rational trier
> of fact could have found that defendant was with Pharr when she was fatally
> injured, that defendant had a motive to cause Pharr's death or her great bodily harm,
> and that defendant caused Pharr's death. *Fletcher*, 260 Mich App at 559-564. The
> trial court properly weighed the evidence and evaluated the credibility of the
> witnesses in favor of the prosecution. See *Kanaan*, 278 Mich App at 619. We
> conclude there was sufficient evidence for the trial court to find defendant guilty of
> second-degree murder.

(*Id.*, PageID.298.)

Petitioner does not dispute the facts identified by the court of appeals as supporting his conviction. Instead, he characterizes the inferences drawn from those facts as merely "reasonable speculation" rather than "reasonable inference." (Pet., ECF No. 1, PageID.24.) Petitioner overstates what is required to support a conviction.

*Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id.* at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. Certainly, the inference identified by the court of appeals—that, based on the facts identified by the court of appeals, Petitioner was with the victim when blunt force was applied and that nature of force indicates that he intended the result—rationally flows from the underlying facts. The inference is not compelled by those facts. The inference may not even be more likely than not. It is simply rational. *Id.* at 656. To succeed in his challenge, Petitioner must show that the identified inference is irrational. He has not.

Petitioner has failed to show that the facts found by the appellate court are not reasonably supported by the record. He has failed to show that the inferences the appellate court identified as supporting the conviction are not rational. And Petitioner has failed to show that the appellate court's rejection of his sufficiency challenge regarding intent and causation is contrary to, or an

unreasonable application of, *Jackson*, the clearly established federal law regarding sufficiency. Accordingly, he is not entitled to habeas relief on this claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a

constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:   April 7, 2020                                    /s/ Sally J. Berens
                                                              Sally J. Berens
                                                              United States Magistrate Judge


## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).